FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 26, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SAMANTHA C.,[1]<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>Defendant. | No. 1:26-cv-3039-EFS<br><br>**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff Samantha C. and the Commissioner of Social Security agree the Administrative Law Judge (ALJ) erred in finding Plaintiff not disabled. But the parties disagree as to whether the decision should

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

be remanded for further proceedings or for an award of benefits. Because of ambiguities in the vocational-expert testimony, the record does not establish that Plaintiff's residual functional capacity (RFC) is consistent with disability. Therefore, the Court remands this case for further proceedings.

## I. Background

Plaintiff filed her Titles 2 and 16 applications for benefits in January 2023, alleging disability beginning January 6, 2023.[2] Plaintiff appeared for a hearing before ALJ P. Young in January 2025, at which Plaintiff and a vocational expert testified.[3] Plaintiff testified that she had not worked since January 2023 because of impairments caused by her bipolar disorder, ADHD, PTSD, carpal tunnel in both wrists, and back pain.[4] She struggled to find regular cognitive behavioral therapy because the therapists who accepted Medicaid in her area were

---

[2] Administrative Record (AR) 314–16, 323.

[3] AR 157–76.

[4] AR 161–62.

overbooked.[5] She took psychiatric medication that helped but caused negative physical side effects.[6] Her physical limitations made her mental health worse.[7] She was 5'2" and weighed 225 pounds.[8] When she pushed herself, her back and legs would hurt so much that she would have to go to bed.[9] She could not reliably attend simple jobs because she could not get out of bed when her back seized up and when she was in a depressed mood.[10] She left her last job when she was threatened by a coworker who was a gang member, which left her afraid to leave her house.[11] She had to take anxiety medication to go shopping, which she could not do without crying.[12]

---

[5] AR 163–64.

[6] AR 164–65.

[7] AR 165–66.

[8] AR 161.

[9] AR 165.

[10] AR 165–67.

[11] AR 167–68.

[12] AR 168–69.

A vocational expert testified that a hypothetical individual with certain limitations, including a restriction to only occasional interactions with supervisors and coworkers, could work as a merchandise marker, electrical assembler, or routing clerk.[13] That same individual could not adjust to any work existing in significant numbers in the national economy if she was further limited to being off-task one hour per eight-hour workday, or would miss two to three days of work per month.[14] The individual could also not maintain competitive employment if she could not complete training with a coworker, and parts of the training period could require frequent contact with coworkers.[15]

The ALJ issued a decision finding Plaintiff not disabled.[16] The ALJ found Plaintiff's alleged symptoms were inconsistent with the

---

[13] AR 172.

[14] AR 174.

[15] AR 175.

[16] AR 138–50. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

medical evidence and other evidence.[17] As to the medical opinions, the ALJ found:

- the reviewing opinions of Matthew C., PsyD, Lisa H., MD, Prianka Gerrish, MD, and Linda S., MD, not persuasive.
- the treating opinions of David Morgan, PhD, and Helena Laubach, ARNP, not persuasive.
- the examining opinions of Thomas Genthe, PhD, and Marquetta Washington, ARNP, not persuasive.[18]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements through March 31, 2024.
- Step one: Plaintiff had not engaged in substantial gainful activity since January 6, 2023, the alleged onset date.
- Step two: Plaintiff had the medically determinable severe impairments of lumbar disorder, obesity, ADHD, PTSD, and bipolar disorder.

---

[17] AR 144.

[18] AR 146–48.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to:

  > perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffolds. She should avoid frequent exposure to extreme cold, wetness, vibration, hazards, machinery, and heights. She can perform simple, routine, and repetitive tasks. She can tolerate few or infrequent changes in a routine work setting. She can occasionally interact with supervisors and coworkers. She cannot work with the public.

- Step four: Plaintiff could not perform past relevant work.
- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as mechanical marker, electrical assembler, and routing clerk.[19]

[19] AR 140–50.

Plaintiff timely requested review of the ALJ's decision by the Appeals Council, which denied review.[20] Plaintiff now appeals to district court.[21]

## II. Standard of Review

When considering the ALJ's findings, the court is constrained to the reasons and supporting explanation offered by the ALJ.[22] The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error"[23] and such error impacted the nondisability determination.[24] Substantial evidence is "more than a

---

[20] AR 1.

[21] ECF No. 1.

[22] *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[23] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[24] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[25]

## III. Analysis

Plaintiff argues the ALJ committed several errors: (1) the RFC finding is consistent with disability; (2) the ALJ improperly assessed Plaintiff's allegations; and (3) the ALJ improperly assessed the mental-health medical opinions. Plaintiff contends remand for an award of benefits is appropriate because all three "credit-as-true" criteria are satisfied. In response, the Commissioner concedes that Plaintiff is

---

[25] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

entitled to remand, but argues that further proceedings are necessary to determine whether Plaintiff is disabled. The Commissioner contends there are conflicts among Plaintiff's subjective complaints and the medical opinions, and generally denies Plaintiff's argument regarding her RFC.

The RFC is the most the claimant can still do despite her limitations.[26] At step five, the ALJ has the burden to identify specific jobs existing in substantial numbers in the national economy that the claimant can perform with her RFC.[27] The ALJ must include properly supported functional limitations in the RFC hypothetical posed to the vocational expert to ensure the identified occupations are consistent with claimant's functional limitations.[28]

---

[26] 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[27] *Johnson v. Shalala*, 50 F.3d 1428, 1432 (9th Cir. 1995). *See* 20 C.F.R. §§ 404.1520(g), 416.920(g).

[28] *Robbins. v. Soc. Sec. Admin*, 466 F.3d 880, 886 (9th Cir. 2006); Soc. Sec. Rlg. 96-8p: Assessing Residual Functional Capacity in Initial Claims.

When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course.[29] However, the court may remand for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand . . . .[30]

When these three elements are satisfied, the decision whether to remand for benefits or further proceedings is within the court's discretion, as it "is a fact-bound determination that arises in an infinite variety of contexts."[31]

Here, the ALJ initially established through vocational-expert testimony that someone with Plaintiff's RFC could work as a

---

[29] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

[30] *Ortiz v. Bisignano*, 179 F.4th 691, 706 (9th Cir. 2026).

[31] *Treichler*, 775 F.3d at 1100 (citation modified).

merchandise marker, electrical assembler, or routing clerk.[32] But Plaintiff's attorney then examined the vocational expert as follows:

> Q For my follow up question is I understand what the individual has the job the merchandise marker, routing clerk, electric assemblies, and this RFC fit. I want to ask specifically about like applying for a job, interviewing and training, if during this time period -- for any kind of this early probationary period you had a hypothetical individual who is only at -- able to have occasional contact as defined vocationally with their supervisors and coworkers, is this somebody who is going to make it through a competitive work, you know, early time period or would this be a special accommodation? Because for example, like they're going through a training day, we're going to train you about how to assemble these electrical accessories and we got to -- and the individual said I've too much anxiety, I've had too much contact with my supervisors, coworkers, trainers, whatever and need breaks now. So, would that -- how would that play out in the competitive work in that early time period?
>
> A If they're not able to complete the training period with a coworker they would not be able to maintain competitive employment.
>
> Q Okay so with the occasional -- limited to occasionally one-third of the time period would be too much for that initial training period?
>
> A Yes, times that are training period it could require like frequent contact with coworkers.[33]

---

[32] AR 172.

[33] AR 174–75.

Contrary to Plaintiff's argument, this vocational-expert testimony does not establish that Plaintiff's RFC is consistent with disability. Instead, the testimony is ambiguous. First, the vocational expert's statement that someone would not be able to maintain competitive employment if they cannot complete training with a coworker is unremarkable and not specific to Plaintiff's RFC or the step-five jobs. Second, it is not clear that the vocational expert was referring to merchandise marker, electrical assembler, or routing clerk when she testified that training could require frequent interaction with coworkers. Third, if anything, the vocational expert might have been referring only to the electrical assembler job, as that is the only job that Plaintiff's attorney roughly described.[34] If so, there would still be 160,000 merchandise marker jobs and 140,000 routing clerk jobs remaining.[35]

---

[34] *See* AR 175 ("Because for example, like they're going through a training day, we're going to train you about how to assemble these electrical accessories . . . .").

[35] *See* AR 172.

The only clear takeaway from the vocational expert's testimony is if a job requires training involving frequent interactions with a coworker, which the electrical assembler job might, then someone who could only occasionally interact with coworkers would not be able to complete such training and thus would not be able to maintain competitive employment as an electrical assembler. This does not establish that Plaintiff is disabled.

Therefore, the first "credit-as-true" criterion—"the record has been fully developed and further administrative proceedings would serve no useful purpose"—is not satisfied. Further administrative proceedings would instead be useful so the ALJ can make fact findings with respect to the training requirements for the relevant jobs.

Finally, the Court need not reach Plaintiff's arguments concerning the subjective complaints and medical opinions, as the Commissioner concedes error and the Court has already determined a necessary purpose for further administrative proceedings. On remand, the ALJ will conduct anew the disability evaluation.

## IV. Conclusion

As the parties agree, Plaintiff is entitled to a remand. Remand for further proceedings, rather than for an award of benefits, is appropriate because the ambiguous vocational-expert testimony does not establish that Plaintiff's RFC is consistent with disability. On remand, the ALJ is to conduct anew the five-step disability evaluation. The ALJ is to solicit vocational-expert testimony regarding the training requirements for any jobs identified at step five and determine whether Plaintiff's social limitations prevent her from completing such training.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.
2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 10 and 12**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 26th day of August 2026.

EDWARD F. SHEA
Senior United States District Judge